**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| FRED VILLANUEVA, AS NEXT FRIEND OF M.V., A MINOR | § § § | |
| v. | § § | A-05-CA-455 LY |
| SAN MARCOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, AND DYANNA EASTWOOD INDIVIDUALLY AND IN HER OFFICIAL CAPACITY | § § § § § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendant San Marcos Consolidated Independent School District's ("SMCISD") Motion for Summary Judgment filed August 1, 2006 (Clerk's Doc. No. 19); Defendant Dyanna Eastwood's Motion for Summary Judgment filed July 28, 2006 (Clerk's Doc. No. 17); Plaintiff's Memorandum in Opposition to Defendant SMCISD's Motion For Summary Judgment (Clerk's Doc. No. 24); and Plaintiff's Memorandum in Opposition to Defendant Dyanna Eastwood's Motion for Summary Judgment (Clerk's Doc. No. 25)  The District Court referred the dispositive motion to the undersigned Magistrate Judge for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

The following summary of the relevant facts is largely based on Plaintiff's filings in this case. At this stage of the proceedings, the Court accepts all well-pleaded facts therein as true, viewing them in the light most favorable to the plaintiff. *See Memon v. Allied Domecq QSR*, 385 F.3d 871, 872–73 (5th Cir. 2004). On January 11, 2005 M.V., a fifteen year old student in SMCISD[1] and the daughter of Plaintiff was called to Defendant Dyanna Eastwood's office. Defendant Eastwood, the school nurse, had been told by a male student that M.V. had told him that she believed she was pregnant and that he might be the father. After being confronted with this news, M.V. denied being pregnant or having a sexual relationship with the male student. However, Defendant Eastwood recommended that she take a pregnancy test. M.V., after being given a cup to urinate into, went to the girls' bathroom alone, while Defendant Eastwood waited outside the bathroom door. When she was finished, Defendant Eastwood took the urine sample and performed the test, which came back negative.

M.V. testified that even though she told Defendant Eastwood she did not believe that she was pregnant, she felt forced or coerced into taking the pregnancy test because she worried that refusing the test would result in disciplinary action by school authorities.[2] M.V. further testified that after

---

[1]Because M.V. is a minor, the Court, pursuant to this District's privacy policy, will use only the initials of M.V. *See* General Order Regarding the Redacting of Personal Data Identifiers from all Pleadings Including Exhibits at p.1, *available at* http://www.txwd.uscourts.gov/rules/stdord/district/privacyorder.pdf. The parties are advised to keep this in mind when submitting filings with the Court in the future.

[2]Eastwood's version of the events is considerably different. Eastwood stated that she only offered the possibility of taking a pregnancy test and that M.V. willingly and voluntarily took the test. It is not controverted that M.V. never verbalized her discomfort at taking a pregnancy test, however, she testified that "I didn't think I could say [no]."

the pregnancy test was performed, Defendant Eastwood strongly recommended that she start taking birth control pills, and told her that it did not matter what M.V.'s parents thought about the matter even though M.V. told her that her parents did not condone prophylactic measures.

Three days later, Plaintiff, after being informed of the events of January 11, had his son call the principal of SMCISD, Dr. Chad Kelly, and schedule a meeting regarding the administration of the pregnancy test to his daughter. Defendant Eastwood could not make that meeting, so another meeting was scheduled for January 18. At that meeting, Defendant Eastwood relayed her version of the events, explaining that she believed M.V. had willingly taken the test. Plaintiff asked her why she did not inform him, as M.V.'s father, of the administration of the pregnancy test. Defendant Eastwood replied that she did not believe she was under any obligation to do so. Kelly informed Plaintiff that he was not aware that pregnancy tests were being dispensed or administered by Defendant Eastwood, but that he would look into the legality of such and consult with the school's attorneys.[3] At a third meeting between Kelly, Defendant Eastwood, and Plaintiff, Plaintiff was given a copy of Section 32.003 of the Texas Family Code by Defendant Eastwood as her support for her contention that she was on firm legal footing in administering pregnancy tests.

While neither Kelly nor the members of the SMCISD Board of Trustees were aware of the pregnancy testing, Rene Barajas, the Assistant Superintendent for Business and Support Services, testified that he was aware of the purchases of pregnancy tests by Jennifer Vogel, the Director of the Parenting Education Program (PEP) – a district-wide program that is largely designed to help pregnant students with the pregnancy process, and to help these at-risk students avoid becoming

---

[3] There are affidavits from seven members of the SMCISD Board of Trustees each stating that he or she was unaware of the availability of pregnancy tests and did not know of any policy of making pregnancy tests available to students.

high-school dropouts. Vogel testified that sometime prior to May 2004 she consulted with other entities (e.g., the Texas Education Agency, the Family Planning branch of the Texas Department of State Health Services) about the legality of purchasing and administering pregnancy tests, and met with then San Marcos High School ("SMHS") Principal Julio Toro before making the decision to go ahead with the initial purchase of the pregnancy tests. She further testified that Priscilla Landry, the then Assistant Superintendent of Personnel, had consulted with the school's lawyers who told her that "the lawyers could find no reason" why the purchase and administration of tests would be problematic. An initial purchase of pregnancy tests was made, and, in the Fall of 2004, more tests were purchased. Vogel estimated that less than fifty total pregnancy tests were purchased by the school district during the course of the program. The pregnancy testing program was discontinued after Plaintiff lodged his complaint with Kelly.

On June 15, 2005, Plaintiff filed this lawsuit alleging federal constitutional rights violations under 42 U.S.C. § 1983 and state tort law claims of assault and battery and invasion of privacy. Plaintiff alleges all claims against both Defendant SMCISD and Eastwood in her official and individual capacities. Both defendants separately filed motions for summary judgment.

## II. ANALYSIS

**A.    Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S.

4

317, 325 (1986). After a proper motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992).

The Court begins its determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir.1992). It then reviews the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the nonmoving party. *See id.* If the nonmoving party sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994).

**B.     Section 1983 Claims**

Plaintiff's suit alleges that SMCISD and Eastwood violated his daughter's Fourth and Fourteenth Amendment rights by insisting that she take a pregnancy test against her wishes. Because both Defendants have filed separate motions for summary judgment, the Court will consider each in turn.

**1.     Claims Against SMCISD**

42 U.S.C. § 1983 is the legal vehicle for individuals to vindicate their federal constitutional rights against persons acting under color of state law. 42 U.S.C. § 1983; *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).[4] Municipal liability under 42 U.S.C. § 1983 requires proof of: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

---

[4]It is well settled that a school district is a "person" for § 1983 purposes. *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978).

"Municipalities can be held liable only when an injury was inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22 (1988) (citing *Monell v. New York City Dept. Of Soc. Servs.*, 436 U.S. 658, 690 (1978). This prevents a municipality from being liable under § 1983 simply for employing a tortfeasor; that is, a municipality cannot be liable under a *respondeat superior* theory. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. *Piotrowski*, 237 F.3d at 579. But a policy may also be evidenced by custom, that is, "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). The policymaker must have either actual or constructive knowledge of the alleged policy, due to its duration and frequency. *Id*.

In this case, Plaintiff does not contend that the pregnancy testing program took the form of official policy of SMCISD. There is no dispute that the policymaking authority for the District is the Board. "Whether a particular official has final policymaking authority is a question of state law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). Texas law unequivocally delegates to the Board "the exclusive power and duty to govern and oversee the management of the public schools of the

district." TEX. EDUC. CODE. ANN. § 11.151(b) (Vernon 2005); *Rivera*, 349 F.3d at 247–48.[5] The summary judgment evidence demonstrates that the Board did not adopt any official policy calling for the administration of pregnancy tests to SMCISD students, nor did any of the Board members know of the practice of administering pregnancy tests at SMHS  Given this, it is beyond dispute that SMCISD did not have an official policy that led to the alleged constitutional violations at issue here.

However, this does not end our inquiry. A custom, that is, a practice that has *not* been formally approved by the Board but is widespread enough to have the force of law could subject SMCISD to liability. *Cox*, 430 F.3d at 748. Plaintiff contends that there was such a custom in place in SMCISD so as to expose the District to liability. To succeed on this argument, Plaintiff must demonstrate that the custom at issue was "so common and well settled as to constitute a custom fairly represent[ing] municipal policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). In addition, the custom must be able to be plausibly imputed to the Board's constructive knowledge (the Court having already determined that the Board did not have actual knowledge because the pregnancy testing program was not implemented by official policy). *Id.* at 94. If such a common and well-settled custom was in fact in place, the Board's actual ignorance of it will not shield the district from liability.

Plaintiff argues that the evidence shows there was a custom or practice in SMCISD to administer pregnancy tests to students, as part of the PEP program. He points out that the director of the PEP program, then SMHS Principal Toro, and a few other lower-level school officials (e.g,

---

[5]"The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district. All powers and duties not specifically delegated by statute to the agency or to the State Board of Education are reserved for the trustees, and the agency may not substitute its judgment for the lawful exercise of those powers and duties by the trustees." TEX. EDUC.CODE. ANN. § 11.151(b) (Vernon 2005).

Vogel, the director of PEP, McGee, a social worker with PEP, Defendant Eastwood, a school nurse), each located in different schools throughout the district, were aware of the original implementation of the program and concomitant purchase of the pregnancy tests. Given that Barajas is among the upper-echelon of the SMCISD administration (he reports directly to the superintendent), and he was involved in the approval process, Plaintiff argues the testing had the implicit approval of the school board. Plaintiff also points to M.V.'s deposition testimony that it was commonly known amongst the students at SMHS that pregnancy tests were available through the school nurse's office.

      Plaintiff's argument, however, overlooks an important part of the municipal liability analysis of § 1983. To show that municipal liability exists, a § 1983 plaintiff must not only demonstrate that there was a custom or practice in place, but they must also show that the custom or practice was a "moving force" in the alleged constitutional violation. *Monell*, 436 U.S. at 694. Plaintiff apparently labors under the misconception that he need only show that there was an official policy or custom within the district of administering pregnancy tests. He must go further, however, and demonstrate that the PEP program's pregnancy testing was the "moving force" in the alleged constitutional deprivation that took place when M.V. was allegedly administered a pregnancy test against her will. Plaintiff does not contend (nor could he), that a program which makes pregnancy tests available to students who desire them violates the Constitution. The summary judgment evidence demonstrates that the PEP program made pregnancy tests available to students on a voluntary basis. There is no summary judgment evidence that the program identified or targeted students and tried to convince (or coerce) them to take tests. When the implicated custom in a § 1983 suit is constitutional on its face, it cannot support municipal liability unless the plaintiff can demonstrate that it was imposed with deliberate indifference to the "known or obvious consequences" that constitutional violations

8

would result. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997). Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability. *See id.* In addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation. *Id.* The Fifth Circuit summed up the relevant standard as follows: "*Bryan County* underscores the need for *Monell* plaintiffs to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998). These requirements must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. *Id.*

And the Court would be diluting these requirements here if we found, as a matter of law, that the pregnancy testing program in place was promulgated with deliberate indifference to the "known or obvious consequences" that constitutional violations would result. *Bryan County*, 520 U.S. at 407. The record is entirely devoid of evidence showing that any girl in SMCISD was given a pregnancy test in a coercive environment (other than the allegations made by M.V.).[6] While there may have been a number of SMCISD employees involved in the creation of the PEP program, and the procurement and administration of pregnancy tests, there is no evidence that it was a common and well-settled practice within SMCISD to coerce students into taking pregnancy tests against their

---

[6]The Court is aware that, in certain narrow circumstances, a single act will suffice to establish municipal liability. However, these cases, as Plaintiff himself notes, deal with lack of sufficient training of employees, *see e.g., City of Canton v. Harris*, 489 U.S. 378 (1989), *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), and lack of sufficient screening by the municipality when making a hiring decision. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997). Moreover, in these cases, unlike here, the constitutionality of the municipal employee's conduct was not in question.

wishes, or that the such coercion was a "known or obvious consequence" of making pregnancy tests available to students through the program. *Bryan County*, 520 U.S. at 407. That is, the Plaintiffs have failed to provide the Court with any evidence of a direct causal link between the practice identified here – a voluntary pregnancy testing program – and the constitutional deprivation alleged. Accordingly, because Plaintiff cannot sustain his burden of showing that the administration of pregnancy tests in a coercive environment was the official policy or custom of SMCISD, the Court recommends that its Motion for Summary Judgment in regard to Plaintiff's Section 1983 claims against it be GRANTED.

### 2. Claims Against Defendant Eastwood in her Official Capacity

Plaintiff has asserted claims against Defendant Eastwood in her official capacity. The Supreme Court has emphasized that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 24 (1991). That is, any claims against public officials in their official capacity are treated as claims against the governmental entity involved. *Id.*; *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

In *Romero v. Becken*, the Fifth Circuit affirmed a dismissal of Section 1983 claims against city officers in their official capacities because the plaintiff also asserted the same claims against the city. 256 F.3d 349, 355 (5th Cir.2001) (affirming dismissal of Section 1983 claims against city officials in their official capacities because they duplicated the claims against the city). The Court reasoned that the claims against the city officers in their official capacities duplicate the claims against the city because to hold both the city and its officers liable for the same claims would make the city liable twice for the same claims. *Romero*, 256 F.3d at 355. *Romero*'s reasoning applies equally to Plaintiff's official capacity claims against Eastwood; he is asserting the same Section 1983

claims against SMCISD that he asserts against Eastwood. Accordingly, the Court recommends that Defendant Eastwood's Motion for Summary Judgment with regard to Plaintiff's Section 1983 official capacity claims should be GRANTED.

### 3. Claims Against Defendant Eastwood in her Individual Capacity

Plaintiff has also asserted Section 1983 claims against Defendant Eastwood in her individual capacity. Defendant Eastwood contends that she enjoys qualified immunity such that the claims against her in her individual capacity are barred. Qualified immunity shields government officials performing discretionary functions from individual liability for civil damages "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The Supreme Court has stated that in determining whether a right is "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (2002) (citation omitted). Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be "on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151 (2001).

If the plaintiff has alleged a violation of a clearly established right, the next step is for the Court to determine whether the official's conduct was objectively reasonable under the law at the time of the incident. *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005). The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity. *Id*. Whether an official's conduct is objectively reasonable depends upon the circumstances confronting the official as well as "clearly established" law in effect at the time of the official's actions. *Sanchez v. Swyden*, 139 F.3d 464, 467 (5th Cir. 1998). The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a "constitutional scholar." *Id.* (citing *Harlow*, 457 U.S. at 815–17).

Because the focus in the qualified immunity inquiry requires us to first determine whether the government actor in question had fair notice or warning that her conduct was unlawful, *see Hope v. Pelzer*, 536 U.S. 730, 739; *see also Kinney v. Weaver*, 367 F.3d 337, 351 (5th Cir. 2004), we must first ascertain whether Defendant's Eastwood alleged conduct of coercing Plaintiff's daughter to take a pregnancy test amounts to a violation of M.V.'s Fourth Amendment rights in the first place. *Saucier*, 533 U.S. at 201. To determine such, we of course apply "currently applicable constitutional standards." *Kinney*, 367 F.3d at 350.

The Fourth Amendment of the Constitution protects individuals from unreasonable searches and seizures by the government, *see* U.S. CONST., amend. IV, and this prohibition against unreasonable governmental intrusions extends to state public school officials as well. *New Jersey v. T.L.O.*, 469 U.S. 325, 336–37 (1985). Whether a search is unconstitutional depends on its reasonableness. Although probable cause is the common touchstone for reasonableness in criminal contexts, in other circumstances, there may be "special needs" that make probable cause

impracticable. *See id.* at 341 (requiring individualized suspicion). And the public school context is one of those settings. Thus, reasonableness is determined by balancing the government's interest against the individual's expectation of privacy. In the public school context, students have a reduced expectation of privacy when compared with the public at large. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656-57(1995) (holding randomly testing student athletes for drugs satisfies Fourth Amendment). Moreover, the nature of the intrusion must also be considered when determining whether a particular search satisfies the reasonableness requirement. Finally, the government's interest in the search must be balanced against the intrusion. This interest must be compelling, one that is "important enough to justify the particular search at hand, in light of other factors that show the search to be relatively intrusive upon a genuine expectation of privacy." *Id.* at 660.

The Third Circuit has held, in a case very nearly on all fours with this case, that "a school official's alleged administration to a student athlete of the pregnancy tests would constitute an unreasonable search under the Fourth Amendment." *Gruenke v. Seip*, 225 F.3d 290, 301 (3rd Cir. 2000); *see also Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3rd Cir 2000). The Court agrees with that conclusion insofar as it is plain that a pregnancy test administered in a coercive environment such that the student felt compelled to submit to the school official's wishes would constitute an unreasonable search and seizure under the Fourth Amendment.[7] A urinalysis test, like the one conducted for drugs in *Vernonia*, is clearly intrusive because it reveals personal information. *See Veronia* at 658. While there may be extreme circumstances where a school could require a

---

[7]It is important to note that the Court agrees with the Third Circuit's conclusion only to the extent that it applies to Plaintiff's allegation here: that his minor daughter was coerced into taking a pregnancy test.

student to take a pregnancy test, an "official cannot . . . require a student to submit to this intrusion merely to satisfy his curiosity." *Gruenke*, 225 F.3d at 301.

Having concluded that Plaintiff has in fact alleged the violation of a constitutional right, the Court must next determine whether Defendant Eastwood's conduct violated a clearly established constitutional right. Given the Third Circuit's holding in *Gruenke* that the coerced administration of a pregnancy test in a school setting is violative of a student's Fourth Amendment rights against unreasonable searches and seizures, *Gruenke*, 225 F.3d at 301, coupled with the Supreme Court line of cases dealing with the confluence of search and seizure, urinalysis, and the public schools, *see, e.g.*, *Bd. Of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822 (2002) (searches by public school officials, such as the collection of urine samples, implicate Fourth Amendment interests); *Veronia*, 515 U.S. at 652 (compelled collection and testing of urine by public school officials is a search for purposes of the Fourth Amendment); *T.L.O.*, 469 U.S. 325 (1985) (the Fourth Amendment applies to public school officials), the Court concludes that the coerced administration of a pregnancy test violates clearly established constitutional rights.

Thus, the next step is for the Court to determine whether Defendant Eastwood's conduct was objectively reasonable under the law at the time of the incident. *Michalik*, 422 F.3d at 258. On this issue, however, the summary judgment evidence is in dispute. Plaintiff contends that Defendant Eastwood's conduct amounted to a violation of his daughter's Fourth and Fourteenth Amendment rights because Defendant Eastwood, in a closed door meeting in a school office, insisted that she take a pregnancy test (the putative unreasonable seizure), and then caused Plaintiff's daughter's urine to be tested with a pregnancy test kit (the putative unreasonable search). M.V.'s testimony supports these conclusions, as she testified that she felt forced or coerced into taking the pregnancy test.

Plaintiff's Memorandum in Opposition to Defendant Dyanna Eastwood's Motion for Summary Judgment ("Plaintiff's Memorandum"), Exh. 2, at p. 35.  Defendant Eastwood's version of these events is quite to the contrary of M.V.'s.  Eastwood testified that M.V. willingly submitted to the pregnancy test.  Plaintiff's Memorandum, Exh. 3, at pp. 30-32.  This contradictory testimony precludes summary judgment for Defendant Eastwood insofar as the claims against her in her individual capacity are concerned because a material fact issue exists as to M.V.'s voluntariness in taking the pregnancy test.[8]  That is to say, if M.V. willingly submitted to the pregnancy test then by definition no unreasonable search and seizure occurred because of the consent exception in Fourth Amendment doctrine.  *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177 (1990).  If consent was given, then Eastwood's actions would clearly be objectively reasonable.  On the other hand, if Eastwood did in fact coerce Plaintiff into agreeing to be tested, then, in light of the clearly established law prohibited such searches of students, Eastwood's actions would not be objectively reasonable.  Accordingly, because a material fact issue exists as to Plaintiff's § 1983 claim against Defendant Eastwood in her individual capacity, the Court recommends that her Motion for Summary Judgment as to this claim be DENIED.[9]

---

[8] Even though Defendant Eastwood argues that M.V. took the pregnancy test voluntarily and did not verbalize any discomfort with taking the test, and M.V. confirmed that she did not vocalize any objection to the test, M.V. has testified that she was silent because she felt she had no other choice.  The Court does not feel this dispute regarding consent is properly resolved at the summary judgment stage of the proceedings, and must be submitted to the fact finder.

[9] This conclusion is not affected by Defendant Eastwood's other arguments regarding Plaintiff's § 1983 claims against her in her individual capacity.  Eastwood argues that even if she is not entitled to qualified immunity, only Defendant SMCISD can be held liable for implementing its "official policy or custom."  However, this argument is precluded by the Court's conclusion that SMCISD did not have an official policy or custom regarding the coerced administration of pregnancy tests to female students within the school district.  Eastwood also argues that Plaintiff's Fourth Amendment claims (brought via the Fourteenth Amendment through the doctrine of incorporation,

**C.     Section 1985 Claims**

Plaintiff next alleges a conspiracy between Defendants SMCISD and Eastwood to deprive his daughter of her civil rights. To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994). In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus. *Id*.

The Fifth Circuit, in *Hilliard*, applied to a school board and its members in the § 1985(3) context the well-established rule that a "corporation cannot conspire with itself any more than a private individual can." 30 F.3d at 654. In addition, several District Courts throughout the circuit have applied the so-called "intracorporate conspiracy" doctrine to a variety of factual scenarios. *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997) (Galveston Police Department and its employees constitute single entity); *Moody v. Jefferson Parish Sch. Bd.*, 803 F. Supp. 1158, 1166 (E.D. La. 1992), *aff'd*, 2 F.3d 604 (5th Cir. 1993) (school board, principal, vice-principal, and various teachers employed by the Jefferson Parish School Board are a single entity); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F. Supp. 1323, 1330 (N.D. Tex. 1988) (high school and its officials constitute a single entity).

---

*Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961)) are precluded because her affidavit states M.V. voluntarily took the pregnancy test. However, the summary judgment standard does not let one defeat a lawsuit simply by alleging legally advantageous facts. As established above, whether M.V. was coerced into taking the pregnancy test is a material fact issue not properly resolved at the summary judgment stage of the proceedings.

Because Defendant Eastwood is an employee of Defendant SMCISD, Plaintiff's Section 1985(3) claim is precluded by the intracorporate conspiracy doctrine as applied to the present facts because neither can be implicated in a conspiracy with the other. Therefore, the Court recommends that both Defendant Eastwood's Motion for Summary Judgment and Defendant SMCISD's Motion for Summary Judgment with regard to Plaintiff's Section 1985(3) claims should be GRANTED.

**D.   STATE LAW CLAIMS**

Finally, Plaintiff asserts state law tort claims of assault and battery and invasion of privacy against Defendant SMCISD and Defendant Eastwood.

**1.   SMCISD**

Defendant SMCISD contends that it is entitled to summary judgment on Plaintiff's state law claims because the Texas legislature has granted school districts sovereign immunity over the types of torts alleged in Plaintiff's suit. Generally, a governmental unit, such as SMCISD, enjoys sovereign immunity and cannot be named as a defendant in a cause of action except when it waives that immunity by consenting to suit. *See Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004 (5th Cir.1992). Texas law grants school districts immunity from tort claims except in suits involving the operation or use of motor vehicles. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.051 (Vernon 2005). Specifically, a school district is liable only for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A)–(B) (Vernon 2005). To put it another way, school districts do not waive their immunity for intentional

torts such as those complained of here.  TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 2005); *Nueces County v. Ferguson*, 97 S.W.3d 205, 223 (Tex. App.– Corpus Christi 2002, no pet.).

Given this, Plaintiff's state law tort claims against Defendant SMCISD are precluded as a matter of law.  Accordingly, the Court recommends that Defendant SMCISD's Motion for Summary Judgment with regard to Plaintiff's state law tort claims of assault and battery and invasion of privacy should be GRANTED.

### 2. Eastwood

Defendant Eastwood contends that she is entitled to summary judgment on Plaintiff's state law tort claims because Texas law precludes personal liability for school district employees. Section 22.0511(a) of the Texas Education Code exempts a professional employee of a school district from personal liability "for any act that is incident to or within the scope of the duties of the employee's position and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injuries to students." TEX. EDUC. CODE ANN. § 22.0511(a) (Vernon 2005); *Choctaw Properties v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 247 (Tex. App. – Waco 2003, no pet.).  A school nurse is explicitly defined as a "professional employee" for purposes of the Education Code. TEX. EDUC. CODE ANN. § 22.051 (Vernon 2005).  The statute only waives immunity from liability insofar as the incident involves "the operation, use, or maintenance of any motor vehicle." TEX. EDUC. CODE ANN. § 22.0511 (Vernon 2005); *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 52 (Tex. 1992); *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W2d 174, 179 (Tex. App. – Houston [14 th Dist.] 1991, no pet.)  Because the tortious conduct alleged in Plaintiff's complaint is not among the exceptions listed in § 22.0511, Defendant Eastwood is

immune from liability as to Plaintiff's state law claims, and the Court recommends that Defendant Eastwood's Motion for Summary Judgment with regard to the state law claims be GRANTED.

### III. RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS that Defendant SMCISD's Motion for Summary Judgment be GRANTED with respect to all claims against it. The undersigned FURTHER RECOMMENDS that Defendant Eastwood's Motion for Summary Judgment be GRANTED IN PART AND DENIED IN PART. The Court RECOMMENDS that the motion be GRANTED with regard to Plaintiff's Section 1983 claim against Eastwood in her official capacity, as well as Plaintiff's Section 1985 and state law claims against Eastwood. The Court RECOMMENDS that the motion be DENIED as to Plaintiff's Section 1983 claim against Eastwood in her individual capacity.

SIGNED this 7 day of September, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE